UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ANDREW CURRY,

                              Plaintiff,                    Civil Action No. 07 CV 7158 (DC)

        -against-

VOLT INFORMATION SCIENCES, INC. and
VOLT TELECOMMUNICATIONS GROUP, INC.,

                              Defendants.
-------------------------------------------------------------X

**MEMORANDUM OF LAW ON BEHALF OF DEFENDANTS
VOLT INFORMATION SCIENCES, INC. AND VOLT TELECOMMUNICATIONS
GROUP, INC. IN SUPPORT OF THEIR MOTION TO COMPEL
ARBITRATION AND STAY THIS ACTION**

**TROUTMAN SANDERS LLP**
**Attorneys for Defendants**
The Chrysler Building
405 Lexington Avenue
New York NY 10174
(212) 704-6000

### MEMORANDUM OF LAW ON BEHALF OF DEFENDANTS VOLT INFORMATION SCIENCES, INC. AND VOLT TELECOMMUNICATIONS GROUP, INC. IN SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION AND STAY THIS ACTION

Defendants Volt Information Sciences, Inc. and Volt Telecommunications Group, Inc. (collectively, the "Defendants") submit this memorandum of law in support of their motion for: an order pursuant to Federal Arbitration Act ("FAA"), 9 U.S.C. § 3: (i) compelling the plaintiff, Andrew Curry ("Plaintiff" or "Curry") to submit the claims alleged in the Complaint to arbitration on the ground that all of the claims are subject to a written agreement to arbitrate; (ii) and staying this action, and (iii) such other and further relief as this Court deems just and proper.

### PRELIMINARY STATEMENT

The pertinent facts are set forth in the accompanying supporting affidavit of Louise Ross, Vice President of Human Resources of defendant Volt Information Sciences, Inc. ("Volt"), sworn to November 9, 2007 (hereafter, "Ross Aff."), and the Court is respectfully referred thereto. The facts are summarized herein below:

Defendant Volt is a public company whose stock is listed on the New York Stock Exchange. Volt is engaged in the business of providing products and services including: skill testing and training services; technical services and temporary personnel; telecommunications services; operator services systems and information services; computer and network services; web site design and program management and consulting. Ross Aff. § 2.

Defendant VTG, a wholly owned subsidiary of Volt, is the telecommunications segment of Volt's business, providing telecommunications services. Ross Aff. § 3.

Plaintiff commenced this action by filing the Complaint on August 10, 2007. Ross Aff. § 4. A copy of the Complaint is annexed to the Ross Aff. as Exhibit "A." Annexed to the

Ross Aff. as Exhibit "B" is a copy of Defendant's answer, asserting among other defenses, that the parties agreed to arbitrate employment disputes. No discovery has yet taken place in this action. Ross Aff. § 6.

In this action, Plaintiff asserts claims of allegations of discriminatory employment practices in violation of Section 806 of the Corporate and Criminal Fraud Accountability Act of 2002, Title VII of the Sarbanes-Oxley Act of 2002, 18 U.S.C. § 1514A, et. seq. ("SOX"). Plaintiff asserts that his employment as Director of the Management Service Group of VTG was terminated in 2006 and that he was otherwise retaliated against because he allegedly engaged in protected activity under Section 806 of SOX. The Defendants' dispute the allegations of the Complaint and believe that Plaintiff's claims are wholly without merit. See Complaint.

Plaintiff disregards that he was provided with the employee handbook of Volt, including its subsidiary VTG and Volt's other subsidiaries and divisions (the "Volt Employee Handbook"). Ross Aff. § 7. The Volt Employee Handbook contains a broad arbitration provision at pages 20-21 thereof, stating that all employment related claims will be subject to mandatory arbitration. The broad arbitration provision in the Volt Employee Handbook states as follows":

### ALTERNATIVE DISPUTE RESOLUTION

"Volt believes that alternative dispute resolution is the most efficient and mutually satisfactory means of resolving disputes between Volt and its employees. **Any dispute, controversy or claim which was not settled through the Concerns and Issues Procedure and arises out of, involves, affects or relates in any way to any employee's employment or a claimed breach of the employment relationship or the conditions of your employment or the termination of your employment, including but not limited to disputes controversies of claims arising out of or relating to the actions of Volt's other employees, under Federal, State and/or local laws shall be resolved by final and binding arbitration.** The applicable rules of the applicable rules of the American

Arbitration Association in the state where employee is or was last employed by Volt shall prevail.

The arbitrator shall be entitled to award reasonable attorneys' fees and costs to the prevailing party. The award shall be in writing, signed by the arbitrator, and shall provide the reasons for the award. The Arbitration may provide for any remedies that would be available in a comparable judicial proceeding, unless such remedies are precluded under state law. This does not prevent you from filing a charge or claim with any governmental administrative agency as permitted by applicable law. (Emphasis added).

**Arbitration is an essential element of your employment relationship with Volt and is a condition of your employment..." (Emphasis added).**

A copy of Volt Employee Handbook is annexed to the Ross Aff. as Exhibit "C."

On March 13, 2002, Plaintiff signed an acknowledgement that he received the Volt Employee Handbook (the "Acknowledgment"). A copy of the Acknowledgment is annexed to the Ross Aff. as Exhibit "D." Ross Aff. § 8.

The Acknowledgment not only set forth that Plaintiff received the Volt Employee Handbook, but in addition, stated that he read, understood and agreed to be "bound" by the arbitration provisions in the Volt Employee Handbook and "expressly waive[d] his right to sue the Company... in court" and that he agreed to submit to final and binding arbitration any dispute arising between him and the Company. The Acknowledgment states, in pertinent part:

"I have read, understand and agreed to be bound by the Company's Discrimination Complaint Procedure, including Arbitration and expressly waive my right to sue the Company, its agents and employees in court and I agree to submit to final and binding arbitration any dispute, claim or controversy arising between me and the Company that I would have been otherwise entitled to file in court."

Ross Aff. § 8.

-3-

As discussed below, arbitration of plaintiff's claims should be compelled and this action stayed under the Federal Arbitration Act and the strong federal policy favoring arbitration agreements. The plain and unambiguous language of the signed Acknowledgment, along with the Volt Employee Handbook, evidences an objective manifestation of assent to arbitration by Plaintiff, as well as a waiver of his right to assert the claims at issue in court.

The arbitration agreement is a broad one that unquestionably covers the claims advanced in the Complaint. Pursuant to the Volt Employee Handbook and Acknowledgment, Plaintiff is required to arbitrate all disputes "aris[ing] out of, involv[ing], affect[ing] or relat[ing] in any way to ... employee's employment or a claimed breach of the employment relationship or the conditions of ... employment or the termination of ... employment, including but not limited to disputes controversies of claims arising out of or relating to the actions of Volt's other employees, under Federal, State and/or local laws..."

All of the claims contained in Plaintiff's Complaint arise out and relate to his employment, his conditions or termination of employment and/or the actions of Volt's other employees under federal and state laws and, therefore, they fall within the scope of the arbitration agreement. In addition, as discussed below, it is well established that whistleblower claims under SOX and similar claims under Title VII and comparable New York statutes are arbitrable. Thus, if the Plaintiff wishes to pursue his claims, he must do so through arbitration.

## ARGUMENT

## ARBITRATION SHOULD BE COMPELLED AND THIS ACTION STAYED

The FAA represents a "strong federal policy in favor of arbitration," and it is a policy that the Second Circuit "ha[s] often and emphatically applied." Arciniaga v. General Motors Corp., 460 F.3d 231, 234 (2d Cir. 2006). Pursuant to the FAA, "questions of arbitrability must

be addressed with a healthy regard for the federal policy [and] any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Cone Mem. Hosp. v Mercury Constr. Corp., 460 U.S. 1, 24, 74 L. Ed. 2d 765, 103 S. Ct. 927 (1983), see also, Desiderio v. NASD, 191 F.3d 198, 204 (2d Cir. 1999). As is the case with any contract, the intention of the parties is controlling, "but [under the FAA] those intentions are generously construed as to issues of arbitrability." Mitsubishi Motors v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626, 87 L. Ed. 2d 444, 105 S. Ct. 3346 (1985). The Federal Arbitration Act (the "FAA") applies to any written agreement to arbitrate "a contract evidencing a transaction involving commerce" (9 U.S.C. § 2).

In pending litigation, an application by one of the parties to compel arbitration under the FAA is governed by 9 U.S.C. § 3 which provides as follows:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . . 9 U.S.C. § 3 (1994)

The Second Circuit has enumerated the following factors to be considered when deciding whether to compel arbitration: (1) whether the parties agreed to arbitrate; (2) the scope of that agreement; (3) whether Congress intended the plaintiff's statutory claims to be nonarbitrable; and (4) if not all claims are arbitrable, the court must determine whether to stay the balance of the proceedings pending arbitration. See Bird v. Shearson Lehman/American Express, Inc., 926

F.2d 116, 118 (2d Cir. 1991), citing, Genesco, Inc. v. T. Kakiuchi & Co., Ltd., 815 F.2d 840, 844 (2d Cir. 1987).[1]

Each of these four questions is easily resolved in favor of staying this action in favor of arbitration.[2] First, plaintiff cannot dispute that he received the Volt Employee Handbook which contains a clear, express and broad arbitration provision and that he signed an Acknowledgment of receipt of the Volt Employee Handbook which acknowledged that he received and understood the arbitration provision in the handbook and further "expressly waive[d] [his] right to sue the company ... in court and agree[d] to submit to final and binding arbitration."]

As stated in Beletsis v. Credit Suisse First Boston Corp., 2002 U.S. Dist LEXIS 16586, at *8 (S.D.N.Y. 2002), "courts in this district have routinely upheld arbitration agreements contained in employee handbooks where, as here, the employee has signed an acknowledgement form." Chanchani v. Salomon/SmithBarney, Inc., 2001 U.S. Dist LEXIS 2036 (S.D.N.Y. 2001), citing, Arakawa v. Japan Network Group, 56 F. Supp. 2d 349, 352 (S.D.N.Y. 1999) holding that parties' arbitration agreement was manifested in employee handbook and acknowledgment form signed by plaintiff, and constituted a valid, enforceable contract to arbitrate); see also Spencer-

---

[1] If the aforesaid questions are answered in the affirmative, the court must grant the application. See PaineWebber Inc. v. Bybyk, 81 F.3d 1193 (2d Cir. 1996). The test does not allow for any exercise of discretion by the trial court. Rather, the FAA "mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 218, 84 L. Ed. 2d 158, 105 S. Ct. 1238 (1985). See also McMahan Sec. Co. v. Forum Capital Markets, 35 F.3d 82, 85 (2d Cir. 1994) ("Under the Federal Arbitration Act ..., a district court must stay proceedings if satisfied that the parties have agreed in writing to arbitrate an issue or issues underlying the district court proceeding."). Accordingly, once a court determines that a claim or claims are to be referred to arbitration, the court is prohibited from any consideration of the merits of those claims. See Gateson v. ASLK-Bank, N.V./CGER-Banque S.A., 1995 U.S. Dist. LEXIS 9004 (S.D.N.Y. 1995).

[2] Here, there can be no dispute about the applicability of the FAA. As an employee in VTG Plaintiff's duties encompassed transactions involving interstate commerce. He was required to use and did use various instrumentalities of interstate commerce, including the mail, telephones and various electronic telecommunications systems.

Franklin v. Citigroup/Citibank N.A., 2007 U.S. Dist. LEXIS 25870 (S.D.N.Y. 2007); Baldeo v. Darden Rests., Inc., 2005 U.S. Dist. LEXIS 289 (E.D.N.Y. 2005); Boss v. Salomon Smith Barney, Inc., 263 F. Supp. 2d 684 (S.D.N.Y. 2003); Rand v. J.C. Bradford & Co., 1998 U.S. Dist. LEXIS 19513 (S.D.N.Y. 1998, Cote J.); Bishop v. Smith Barney, Inc., 1998 U.S. Dist. LEXIS 1239 (S.D.N.Y. Feb. 6, 1998, Cote, J); Degaetano v. Smith Barney, 1996 U.S. Dist. LEXIS 1140, at *7-8 (S.D.N.Y. 1996, Cote, J.). (holding that signed arbitration agreement in employment handbook was an enforceable contract in accordance with New York law).

Additionally, when an arbitration agreement is a condition of employment, as here (an "essential" condition of employment), an employee "will be deemed to have accepted" an arbitration agreement when she continues to work after the promulgation of the arbitration policy. Here, Plaintiff not only received the Handbook and signed the Acknowledgment, he also continued to work for four years after doing so. See Chanchani, 2001 U.S. Dist. LEXIS 2036 at *3.

In Spencer-Franklin v. Citibroup/Citibank N.A., supra, at * 3, the court stated, in like circumstances involving an employee handbook and acknowledgment:

> Here, when defendant Citibank's arbitration policy was adopted, plaintiff received a copy of the policy with a memo attached. The memo clearly stated: "you and the Company agree to make arbitration the required and exclusive forum for resolution of all employment-related [disputes based on legally protected rights ... Your continued employment will constitute acceptance of the Arbitration Policy." Plaintiff continued to be employed by Citibank, evidencing her acceptance of the policy. In addition, a copy of the policy was included in Citibank's employee handbook. The handbook came with an acknowledgment form stating that "I understand that this Handbook contains a policy that requires me to submit employment-related disputes to binding arbitration (see page 37)." Plaintiff signed the acknowledgment form, acknowledging her understanding and acceptance of the policy. Therefore, Magistrate Judge Gorenstein's recommendation that this case be dismissed because plaintiff knowingly entered into an agreement to submit her employment-related claims to arbitration is not clearly erroneous.

Second, pursuant to the Volt Employee Handbook, Plaintiff is required to arbitrate all disputes "aris[ing] out of, involv[ing], affect[ing] or relat[ing] in any way to ... employee's employment or a claimed breach of the employment relationship or the conditions of ... employment or the termination of ... employment, including but not limited to disputes controversies of claims arising out of or relating to the actions of Volt's other employees, under Federal, State and/or local laws..."

All of the claims contained in Plaintiff's Complaint arise out of his employment, his conditions or termination of employment and/or the actions of Volt's other employees and, therefore, they fall within the scope of the arbitration agreement. See Arakawa, 56 F. Supp. 2d at 352-53 (holding that Title VII claims where employment related claims within the scope of an arbitration agreement contained in an employee handbook).

Third, it is well established that claims under SOX are arbitrable. See Alliance Bernstein Inv. Research & Mgmt., Inc. v. Schaffran, 445 F.3d 121 (2d Cir. 2006); Boss v. Salomon Smith Barney, Inc., 263 F. Supp. 2d 684 at * 4 (S.D.N.Y. 2003) (court stating that "[t]here is nothing in the text of the statute or the legislative history of the Sarbanes-Oxley act evincing intent to preempt arbitration of claims under the act. Nor is there an inherent conflict between arbitration and the statute's purposes. Accordingly, Boss's claims are arbitrable. Salomon's motion to stay this litigation and compel arbitration before the NASD is granted"). See also Guyden v. Aetna, Inc., 2006 U.S. Dist. LEXIS 73353 (D. Conn. 2006) (court rejecting complainant's arguments that arbitration frustrates the legislative intent of SOX).[3]

---

[3] In analogous cases, the Second Circuit and courts in this district, including Your Honor, have consistently held that Title VII discrimination and retaliation claims arising from private employment agreements are similarly arbitrable. Cap Gemini Ernst & Young U.S., L.L.C. v. Nackel, 98 Fed. Appx. 65 (2d Cir. 2004 – affirming decision of Judge Cote); Desiderio v. National Association of Securities
(continued...)

Particularly apposite to this matter are two decisions rendered by Judges of this Court in which the court compelled arbitration and stayed employment discrimination actions against Volt based upon a virtually identical arbitration provision with different employees. See Tuskey v. Volt Info. Sci., Inc., 2001 U.S. Dist. LEXIS 10980 (S.D.N.Y. 2001) and Gordon v. Volt Info. Sci, Inc., (LAK 2000) (See Exhibits A and B hereto).

Based upon the foregoing, Plaintiff should be compelled to arbitrate and this action should be stayed.

---

(...continued)
Dealers, Inc., 191 F. 3d 198 (2d Cir. 1999); Elwell v. Google, Inc., 2006 U.S. Dist. LEXIS 3114 (S.D.N.Y. 2006, Cote J);Hart v. Canadian Imperial Bank of Commerce, 43 F. Supp 2d 395 (S.D.N.Y. 1999); Litaker v. Lahman Bros. Holdings, 1999 U.S. Dist. LEXIS 12581 (S.D.N.Y. Aug. 13, 1999); Rand v. J.C. Bradford & Co., supra; Bishop v. Smith Barney, Inc., supra.

## CONCLUSION

For the reasons set forth above, defendants respectfully request that this Court grant their

motion to compel arbitration and for a dismissal or stay of this action in all respects.

Dated: November 9, 2007
      New York, New York

                             Respectfully submitted,

                             TROUTMAN SANDERS LLP

                             By:_____

                                 Sharon H. Stern (SHS-3788)
                                 Attorneys for Defendants
                                 Volt Information Sciences, Inc.,
                                 and Volt Telecommunications
                                 Group, Inc.
                                 The Chrysler Building
                                 405 Lexington Avenue
                                 New York, New York 10174
                                 (212) 704-6000

# EXHIBIT A

10 of 10 DOCUMENTS

**DANA TUSKEY, Plaintiff, -v.- VOLT INFORMATION SCIENCES, INC., VOLT SERVICES GROUP, STEVE SHAW, LOUISE ROSS AND JOHN SEXTON, each in their official and individual capacities, Defendants.**

00 Civ. 7410 (DAB) (GWG)

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*2001 U.S. Dist. LEXIS 10980*

**August 3, 2001, Decided
August 3, 2001, Filed**

**DISPOSITION:** [*1] Defendants' motion to compel arbitration and to stay action granted.

**COUNSEL:** For Plaintiff: Daniel Cherner, Esq., LAW OFFICES OF DANIEL CHERNER, New York, New York.

For Volt Information Sciences, Inc., Volt Services Group, Louise Ross, Defendants: Sharon H. Stern, Esq., JENKINS & GILCHRIST PARKER CHAPIN LLP, New York, New York.

**JUDGES:** GABRIEL W. GORENSTEIN, United States Magistrate Judge.

**OPINION BY:** GABRIEL W. GORENSTEIN

**OPINION**

*OPINION AND ORDER*

GABRIEL W. GORENSTEIN, United States Magistrate Judge

The defendants in this employment discrimination case have moved to compel arbitration of the plaintiff's claims pursuant to the Federal Arbitration Act, *9 U.S.C. § 1 et seq.*, and to stay this action pending the outcome of the arbitration. They also seek to strike the plaintiff's jury demand. For the reasons stated below, the defendants' motion to compel arbitration and stay proceedings is granted. Thus, the Court need not reach the request to strike the jury demand. [1]

1 While the parties have not raised the issue, the Court notes that a motion to stay an action and

compel arbitration is not a motion for dispositive relief as set forth in *28 U.S.C. § 636(b)(1)(A)*. Accordingly, such a motion maybe decided by a Magistrate Judge. *See, e.g., Touton, S.A. v. M.V. Rizcun Trader, 30 F. Supp. 2d 508, 510 (E.D. Pa. 1998); Herko v. Metropolitan Life Ins., 978 F. Supp. 149, 150 (W.D.N.Y. 1997).*

[*2] *FACTUAL BACKGROUND*

Plaintiff Dana **Tuskey** brought this action seeking relief under Title VII, *42 U.S.C. § 2000e et seq.*; the New York State Human Rights Law, *New York Exec. Law § 296 et seq.*; and common-law claims of breach of contract and intentional infliction of emotional distress. All of **Tuskey's** claims relate to her employment with Volt Information Sciences, Inc ("Volt").

The complaint alleges that **Tuskey** was first employed by Volt in March 1998. Complaint P 9. Volt is a corporation listed on the New York Stock Exchange and is engaged in the business of providing, among other things, technical and clerical services in a consulting capacity to other businesses. *Id.* P 4. **Tuskey's** first position at Volt was as a technical recruiter in its Advanced Technology Services ("ATS") division of Volt. *Id.* P 10. Sometime during November or December 1998, **Tuskey** was made Branch manager of Volt's ATS division office located in Woodbridge, New Jersey. *Id.* P 12.

Shortly after being promoted to the Branch Manager position, **Tuskey** entered into an employment agreement with Volt in connection with her position as Branch Manager. *See* Affidavit [*3] of Dana **Tuskey** in Support of Plaintiff's Opposition to Defendant's Motion to Compel Arbitration dated March 20, 2001 at P 2 (hereinafter, "**Tuskey** Aff."). The employment agreement contained the following arbitration provision:

### 7. AGREEMENT TO ARBITRATE DISPUTES.

Any dispute, controversy or claim arising out of, involving, affecting or related to this Agreement, or breach of this Agreement, or arising out of, involving or related in any way to your employment or the conditions of your employment or the termination of your employment, including but not limited to disputes, controversies or claims arising out of or related to the actions of the Company's other employees, under Federal, State and/or local laws, shall be resolved by final and binding arbitration in accordance with the applicable rules of the American Arbitration Association in the state where you are or were last employed by the Company. The arbitrator shall be entitled to award reasonable attorneys' fees and costs to the prevailing party. The award shall be in writing, signed by the arbitrator, and shall provide the reasons for the award. Judgment upon the arbitrator's award may be filed in and enforced by [*4] any court having jurisdiction. This Agreement to Arbitrate Disputes does not prevent you from filing a charge or claim with any governmental agency as permitted by applicable law.

*See* Employment Agreement Letter dated December 16, 1998, P 7 (hereinafter "Employment Agreement"), reproduced as Exhibit B to Affidavit of Howard B. Weinreich in Support of Defendants' Motion to Compel Arbitration and Stay Action, dated February 16, 2001 (hereinafter, "Weinreich Aff."). **Tuskey** signed the Agreement on December 21, 1998. Employment Agreement at 8.

**Tuskey** signed an additional document concerning her employment with Volt on July 27, 1999. *See* Amendment Number 1, dated June 20, 1999 (Annexed as Exhibit A to **Tuskey** Aff.) (hereinafter "Amendment"). The Amendment was denominated "amendment Number 1" to the Employment Agreement. *Id.* at 1. It states that it "modifies" only "Paragraph 17 of the [Employment Agreement]." Amendment at 1. Following this statement are a number of terms that relate exclusively to **Tuskey's** compensation. Amendment at 1-2. Paragraph 17 of the original Employment Agreement also relates exclusively to compensation.

On February 11, 2000, **Tuskey** filed a charge [*5] of sex discrimination and retaliation with the EEOC.

Complaint P 46. Subsequent to the filing of this charge, Volt terminated **Tuskey's** employment. *Id.* P 47. On July 3, 2000, **Tuskey** received a right to sue letter from the EEOC. *Id.* P 48. On September 29, 2000, **Tuskey** filed her Complaint in this case. Each factual allegation relates to her employment and termination at Volt.

On April 18, 2001, the defendants filed their motion to compel arbitration, to stay these proceedings pending its outcome, and to strike the plaintiff's jury demand.

### DISCUSSION

### I. MOTION TO COMPEL ARBITRATION

The Federal Arbitration Act provides that

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default [*6] in proceeding with such arbitration.

9 U.S.C. § 3. The following four factors apply in determining whether or not a court should stay an action and compel arbitration under the Federal Arbitration Act:

First, [the Court] must determine whether the parties agreed to arbitrate; second, it must determine the scope of the agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then determine whether to stay the balance of the proceedings pending arbitration.

*Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 844 (2d Cir. 1987)* (internal citations omitted). If the four factors are answered in the affirmative, the Court must grant the application to stay the proceedings and compel

the arbitration. *See, e.g., PaineWebber Inc. v. Bybyk, 81 F.3d 1193, 1198 (2d Cir. 1996)*.

Tuskey has not challenged the applicability of the second and fourth factors. Accordingly, we will examine only (1) the agreement to arbitrate and (2) whether [*7] the claims are arbitrable.

A. *Agreement to Arbitrate*

As previously described, the Employment Agreement signed by Tuskey contained an "Agreement To Arbitrate Disputes" clause. Employment Agreement P 7. In her response to the defendants motion and the accompanying affidavit, Tuskey does not contest that she signed the Employment Agreement. Rather, she appears to make three arguments to avoid its effect: (1) that the arbitration agreement is unenforceable because she did not understand it and it was never explained to her, *see* Tuskey Aff., PP 3, 5, 8; Plaintiff's Memorandum of Law In Opposition to Defendants' Motion to Compel Arbitration and Stay the Action or Alternative, to Strike the Jury Demand (hereinafter, "Plaintiff's Memorandum") at 5-6; (2) that the Employment Agreement was nullified by the Amendment, Plaintiff's Memorandum at 7-8; and (3) that the arbitration agreement did not contain "any specific waiver [of her statutory right to sue] as contemplated by the courts." Plaintiff's Memorandum at 5.

*1. Enforceability of the Arbitration Agreement.* With respect to the enforceability of the Employment Agreement, Tuskey makes numerous assertions in her affidavit that [*8] she did not "understand" the agreement, Tuskey Aff., PP 5, 8; that it was never "properly explained" to her, *id.* P 3; that she did not "have the opportunity to negotiate any of [its] terms" or "consult with an attorney," *id.* PP 4, 5; and that she was "told" she "had to" sign it, *id.* P 7. In her memorandum of law, however, Tuskey never makes clear why she believes those assertions are relevant. She states only that "there was no level playing field here" and seems to analogize her situation to those cases holding that an employee cannot be bound by an agreement to arbitrate that has never been ratified by an employee because it is contained in a collective bargaining agreement. *See* Plaintiff's Memorandum at 5. Tuskey cites to just two cases in support of her argument on this point: *Bird v. Shearson Lehman/American Express, Inc., 926 F.2d 116 (2d Cir. 1991),* and *Genesco, supra.* See Plaintiff's Memorandum at 5. These cases, however, have no relevance to her argument. *Bird* rejected an effort to avoid an arbitration agreement and *Genesco* enforced an agreement that had not even been signed by the party against whom it was being [*9] enforced.

As *Genesco* notes, arbitration agreements are to be interpreted "under federal law, which comprises gener-

ally accepted principles of contract law." *Genesco, 815 F.2d at 845.* Contract law is clear that parties are "conclusively" bound by the contracts they sign whether or not the party has read the contract as long as there is no fraud, duress or some other wrongful act of the other party. *See, e.g, State Bank of India v. Star Diamonds, Inc., 901 F. Supp. 177, 179 (S.D.N.Y. 1995)* (party is legally bound by his or her signature to a contract and is conclusively presumed to know its contents and to assent to them); *Maines Paper and Food Service Inc. v. Adel, 256 A.D.2d 760, 761, 681 N.Y.S.2d 390 (3d Dep't 1998)* (holding that the rule applies even where the plaintiff suffers from "an inability to understand the English language") (citing cases); *Freda v. McNamara, 254 A.D.2d 251, 252-53, 678 N.Y.S.2d 135 (2d Dep't 1998)* (plaintiff was bound by papers signed by him even though they were not explained to him); *Schmidt v. Magnetic Head Corp., 97 A.D.2d 151, 157, 468 N.Y.S.2d 649 (2d Dep't 1983)* [*10] (party's subjective knowledge of the contents of a contract at the time he signs it is irrelevant).

These same principles have been applied to arbitration clauses. *See, e.g., Hart v. Canadian Imperial Bank of Commerce, 43 F. Supp. 2d 395, 405 (S.D.N.Y. 1999)* ("plaintiff's subjective knowledge of the scope of the arbitration clause is irrelevant and he is presumed to have agreed to all the terms of the contract") (citing cases); *Smith v. Lehman Bros., Inc., 1996 U.S. Dist. LEXIS 9485, *4, 1996 WL 383232 at *1 (S.D.N.Y. July 8, 1996)* (plaintiff's assertion that he was not aware of arbitration clause does "not constitute economic duress, coercion, or fraud, [because he] is conclusively presumed to have assented to submit his claims to arbitration"); *Maye v. Smith Barney Inc., 897 F. Supp. 100, 108 (S.D.N.Y. 1995)* ("one who signs or accepts a written contract . . . is conclusively presumed to know its contents and assent to them") (citations and internal quotation marks omitted); *Hall v. Metlife Resources/Div. of Metro. Life Ins. Co., 1995 U.S. Dist. LEXIS 5812, 1995 WL 258061, at *2-3 (S.D.N.Y. May 3, 1995)* (arbitration clause binding where plaintiffs claimed in affidavits [*11] that they were unaware that forms they signed contained arbitration clauses). Thus, Tuskey's allegations that she did not "understand" the agreement or had no opportunity to negotiate the clause are irrelevant. This is all the more so in a case where the plaintiff herself alleges she was a capable, well-paid professional hired for managerial positions with significant job responsibilities. *See* Complaint PP 11-14; Amendment at 1-2.

*2. Effect of the Amendment.* Tuskey also argues that the Employment Agreement was superseded by the Amendment, which does not contain an arbitration clause. *See* Plaintiff's Memorandum at 7-8; Tuskey Aff., PP 9-10. This argument is frivolous. The Amendment states that it "constitute[s] amendment Number 1 . . . to

your Employment Agreement dated December 16, 1998" and that "*Paragraph 17 of the Agreement* is modified" by the contents of the Amendment. Amendment at 1 (emphasis added). As noted, the contents of the Amendment relate exclusively to **Tuskey's** compensation, which was also the topic of paragraph 17 of the Employment Agreement. Nowhere does the Amendment purport to supersede or modify the other 17 paragraphs of the Employment Agreement, [*12] which included the arbitration clause.

*3. Plaintiff's Waiver.* Finally, **Tuskey** argues that "the arbitration clause in this case does not contain any specific waiver as contemplated by the courts," Plaintiff's Memorandum at 5, arguing that "it contains a general, boilerplate provision which really carries no meaning whatsoever." *Id.* at 5-6. This argument is also frivolous. **Tuskey** is apparently referring to the Supreme Court's decision in *Wright v. Universal Maritime Serv. Corp., 525 U.S. 70, 142 L. Ed. 2d 361, 119 S. Ct. 391 (1998)*, in which the Court held that it would not "infer from a general contractual provision that the parties intended to waive a statutorily protected right unless the undertaking is 'explicitly stated.'" *Id. at 80* (citing cases). *See* Plaintiff's Memorandum at 4-5. *Wright*, however involved a clause in a collecting bargaining agreement that provided for arbitration only of "matters under dispute," which *Wright* noted could refer merely to matters disputed under the collective bargaining agreement. *525 U.S. at 80*. Here, by contrast, the language of the arbitration clause is absolutely clear that "any [*13] dispute, controversy or claim arising out of, involving, affecting or related in any way to [**Tuskey's**] employment . . . or the termination of [**Tuskey's**] employment" would be resolved by "final and binding arbitration." Employment Agreement P 7. It would be difficult to imagine a clearer and more specific agreement to arbitrate. [2]

2    **Tuskey's** additional allegation that the Employment Agreement was not given to her until nine months after she was first employed by Volt, **Tuskey** Aff. at P 2, is similarly unavailing. **Tuskey** does not explain the legal relevance of this fact to the arbitrability of her claims. To the extent that her argument can be construed as a claim that there was lack of consideration for her promise to arbitrate, **Tuskey's** submissions concede that she continued her employment following the signing of the Employment Agreement. *See* Complaint PP 30-46; **Tuskey** Aff. P 9, 10. Continued employment is adequate consideration for agreements entered into by the parties after employment has commenced. *See Zellner v. Stephen D. Conrad, M.D., P.C., 183 A.D.2d 250, 256, 589 N.Y.S.2d 903 (2d Dep't 1992)* (continued employment is sufficient consideration for cove-

nant not to compete signed after employment had already commenced); *cf. Andre v. Gaines Berland, Inc., 1996 U.S. Dist. LEXIS 9383, 1996 WL 383239* at *2 (S.D.N.Y. July 8, 1996) (continued maintenance of customer account sufficient consideration for agreement to arbitrate disputes between client and brokerage firm signed after brokerage relationship was already established).

[*14] B. *Arbitrability of Title VII Claims*

The Second Circuit has ruled that claims arising under Title VII are arbitrable. *See Desiderio v. NASD, 191 F.3d 198, 206 (2d Cir. 1999); see also Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 35, 114 L. Ed. 2d 26, 111 S. Ct. 1647 (1991)* (claims brought under the Age Discrimination in Employment Act are arbitrable); *PriceWaterhouse-Coopers LLP v. Rutlen, 2000 U.S. Dist. LEXIS 5143*, *4, 2000 WL 460478 at *2 (S.D.N.Y. April 20, 2000)* ("consistent with [] federal policy . . . Title VII claims, like other federal statutory claims, are arbitrable"); *Mahant v. Lehman Bros., 2000 U.S. Dist. LEXIS 16966, 2000 WL 1738399* at *3 (S.D.N.Y. November 22, 2000)* (citing cases). **Tuskey** concedes that *Desiderio* is controlling authority but argues that it is "incorrect and flawed." Plaintiff's Memorandum at 3. Obviously, this Court is bound by its holding.

The plaintiff also argues that the FAA does not apply to labor and employment contracts, *see 9 U.S.C. § 1* (excluding from coverage "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce"), [*15] relying on *Circuit City Stores, Inc. v. Adams, 194 F.3d 1070 (9th Cir. 1999).* Subsequent to the filing of plaintiff's brief, however, the Supreme Court reversed the Ninth Circuit's decision in *Circuit City. See Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 149 L. Ed. 2d 234, 121 S. Ct. 1302 (2001).* The Court squarely held that the FAA does not exclude employment contracts from the scope of arbitrable claims.

II. *MOTION FOR STAY*

*Section 3* of the Federal Arbitration Act provides that the district court shall stay the trial of an action brought "upon any issue referable to arbitration under an agreement in writing for such arbitration." *9 U.S.C. § 3. See also McMahan Sec. Co. v. Forum Capital Markets, 35 F.3d 82, 85 (2d Cir. 1994)* ("Under the Federal Arbitration Act . . ., a district court must stay proceedings if satisfied that the parties have agreed in writing to arbitrate an issue or issues underlying the district court proceeding."). Because the plaintiff's claims are subject to arbitration, this action must be stayed.

*Conclusion*

2001 U.S. Dist. LEXIS 10980, *

For the foregoing reasons, defendants' motion to compel arbitration and to [*16]    stay this action is granted. The Clerk is requested to place the matter on the suspense calendar pending any motion to confirm the arbitrator's award.

SO ORDERED.

Dated: August 3, 2001

New York, New York

GABRIEL W. GORENSTEIN

United States Magistrate Judge

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
SUZANNE GORDON,

                Plaintiff,

          -against-                                   00 Civ. 4188 (LAK)

VOLT INFORMATION SCIENCES, INC., et al.,

                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## ORDER

LEWIS A. KAPLAN, *District Judge.*

          This is an action for alleged employment discrimination pursuant to Title VII of the Civil Rights Act of 1964, as amended. Plaintiff's employment contract, however, contains an arbitration clause, and defendants move to compel arbitration.

          This case is controlled by *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20 (1991), and *Desiderio v. NASD,* 191 F.3d 198 (2d Cir. 1999), both of which held that arbitration clauses contained in securities industry Forms U-4, forms by which certain industry employees apply to the NASD for registration, are enforceable even in Title VII cases. Indeed, plaintiff appears to concede as much, stating that "although the Second Circuit has 'spoken', so to speak, Plaintiff's position is that the *Desiderio* ruling is incorrect and flawed, as a matter of law . . ." (Pl. Mem. 3)

          This Court is bound by controlling decisions of the United States Supreme Court and the Second Circuit. The cases on which plaintiff relies, which deal with arbitration clauses in collective bargaining agreements, raise different considerations and, in any case, cannot be applied here in view of the appellate courts' consistent distinction between arbitration clauses in private contracts like plaintiff's and those in collective bargaining agreements. Accordingly, defendants' motion is granted. Judgment shall enter compelling plaintiff to proceed to arbitration if she wishes to pursue with her claim and staying this action. The Clerk shall close the case.

          SO ORDERED.

Dated: September 20, 2000

                                                                   Lewis A. Kaplan

2

United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ANDREW CURRY,

                         Plaintiff,                        Civil Action No. 07 CV 7158 (DC)

     -against-                            **AFFIDAVIT OF SERVICE**

VOLT INFORMATION SCIENCES, INC. and
VOLT TELECOMMUNICATIONS GROUP, INC.,

                         Defendants.
------------------------------------------------------------X

STATE OF NEW YORK    )
                        ) ss.:
COUNTY OF NEW YORK  )

         I, **WENDY ISBISTER,** being duly sworn, state:

         I am not a party to the action; am over eighteen (18) years of age; and reside in Pawling, New York.

         On **November 9, 2007,** I served a copy of a **Memorandum of Law on Behalf of Defendants**, by depositing a true copy of the same, enclosed in wrapper, via overnight mail under the exclusive care and custody of FedEx, addressed to the following at the last know addresses set forth below:

To:    Jonathan Ben-Asher, Esq.
        Beranbaum Menken Ben-Asher & Bierman LLP
        80 Pine Street, 32nd Floor
        New York, New York 10005

                                  _Wendy L. Isbister_
                                    Wendy L. Isbister

Sworn to before me this
9th day of November, 2007

_Lucille Ortiz_
  Notary Public
   LUCILLE ORTIZ
NOTARY PUBLIC. State of New York
     No 01OR4722675
  Qualified in Nassau County
Commission Expires Feb. 28, 2011