UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ANDREW CURRY,

                       Plaintiff,                  Civil Action No. 07 CV 7158 (DC)

   -against-

VOLT INFORMATION SCIENCES, INC. and
VOLT TELECOMMUNICATIONS GROUP, INC.,

                       Defendants.
------------------------------------------------------------X

**REPLY MEMORANDUM OF LAW ON BEHALF OF
DEFENDANTS VOLT INFORMATION SCIENCES, INC. AND
VOLT TELECOMMUNICATIONS GROUP, INC. IN FURTHER SUPPORT
OF THEIR MOTION TO COMPEL ARBITRATION AND STAY THIS ACTION**

                                                        **TROUTMAN SANDERS LLP**

                                                        Sharon H. Stern, Esq.
                                                        405 Lexington Avenue
                                                        New York, New York 10174
                                                        (212) 704-6000

                                                        *Attorneys for Defendants*

Defendants Volt Information Sciences, Inc. and Volt Telecommunications Group, Inc. (collectively, the "Defendants" or "Volt") submit this reply memorandum of law in further support of their motion for an order pursuant to Federal Arbitration Act ("FAA"), 9 U.S.C. § 3: (i) compelling plaintiff, Andrew Curry ("Plaintiff" or "Curry") to submit the claims alleged in the Complaint to arbitration on the ground that the claims are subject to a written agreement to arbitrate; (ii) and staying this action.

## PRELIMINARY STATEMENT[1]

In opposition to this motion to compel arbitration, it is significant that Curry does not dispute the following critical facts: a) he received the Volt Employee Handbook ("Handbook"), which explicitly conditioned his employment on the agreement to arbitrate contained therein, stating that arbitration was an essential element of his employment; b) he received, signed, and returned to Volt, the Acknowledgment form, within which he expressly waived his right to sue Volt and assented to "final and binding arbitration;" c) he worked for Volt for several years following his acceptance of the arbitration agreement.; d) he had full capacity to agree to be bound by the arbitration agreement; e) the claims at issue in the Complaint are subject to, and fall within, the arbitration agreement; and f) there is a strong judicial policy of favoring arbitration agreements.

Rather, Curry attempts to evade the enforcement of a valid arbitration agreement by alleging that the Handbook and the Acknowledgement do not create any contract rights or obligations because of disclaimer and reservation of rights language contained therein. Curry

---

[1] In his papers, Curry recites at length the allegations of the Complaint. In Volt's answer, however, it denies all of Curry's material allegations and asserts sixteen (16) affirmative defenses, including that the dispute is subject to an arbitration agreement. It should also be noted that it is not disputed that prior to this lawsuit, on February 14, 2007, OSHA determined that there was not reasonable cause to conclude that Defendants had violated Sec. 806. A copy of the Complaint is annexed to the Affidavit of Louise Ross ("Ross Aff."), filed with Volt's moving papers, as Exhibit "A." Annexed to the Ross Aff. as Exhibit "B" is a copy of Defendant's answer. A copy of Handbook is annexed to the Ross Aff. as Exhibit "C." A copy of the Acknowledgment is annexed to the Ross Aff. as Exhibit "D."

points to the statement on page 7 of the Handbook that "[the handbook] is not intended to constitute a legal contract," and to the "policies, benefits, practices and procedures" ... are not a contract of any kind" (and similar language in the Acknowledgement), and language in both documents that Volt has the right to change its policies and procedures.

As Curry is arguing that the arbitration agreement is not valid, Supreme Court precedent dictates that the arbitrator, rather than the court, should decide this threshold issue because it is well settled that the validity of the arbitration agreement is an issue for an arbitrator to decide in the first instance. See Buckeye Check Cashing v. Cardegna, 546 U.S. 440 (2006); Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395 (1967) and their progeny, more fully addressed at pp. 4-5, infra.

If, however, the court determines this threshold issue, it should determine that a binding arbitration agreement exists. The necessary elements of offer, acceptance and consideration are present. As further addressed below, at pp. 2-3 infra, the Handbook and Acknowledgement contained the offer, Curry accepted the provisions by signing the Acknowledgment, and the consideration was his continued employment with Volt. Where such consideration exists, as here, mutuality of obligations is not necessary.

Furthermore, the arbitration provision in the Handbook employs firm and binding contractual language. The provision is set forth on pages 20 and 21 of the Handbook introduced by the bolded and capped heading: **"ALTERNATIVE DISPUTE RESOLUTION."** The language is clear and in strong tenor and provides that employment disputes "shall" be arbitrated and that "arbitration is an essential element of your employment relationship with Volt and is a condition of ...employment."[2] In addition to the clear and unequivocal arbitration provision in the Handbook on

---

[2] The arbitration provision provides in full:

(continued...)

March 13, 2002, Curry signed a distinct acknowledgement that he received the Handbook, entitled in bold and capped letters, "**ACKNOWLEDGMENT**". It is on a separate page from the rest of the Handbook. The Acknowledgment not only sets forth that Curry received the Handbook, but the final paragraph, separated from all other provisions of the Acknowledgement, also contains its own arbitration provision wherein Curry "expressly waive[d] [his] right to sue" and "agree[d] to submit to final and binding arbitration" all disputes between him and the company.[3] Thus, both the arbitration provision in the Handbook and in the Acknowledgment use contractual terms that could not be clearer or stronger, such as "I have read understood and agree to be bound," "I agree," "final

---

(...continued)

"Volt believes that alternative dispute resolution is the most efficient and mutually satisfactory means of resolving disputes between Volt and its employees. Any dispute, controversy or claim which was not settled through the Concerns and Issues Procedure and arises out of, involves, affects or relates in any way to any employee's employment or a claimed breach of that employment relationship or the conditions of your employment or the termination of employment, including but not limited to disputes, controversies or claims arising out of or related to the actions of Volt's other employees, under Federal, State and/or local laws shall be resolved by final and binding arbitration. The applicable rules of the American Arbitration Association in the state where employee is or was last employed by Volt shall prevail.

The arbitrator shall be entitled to award reasonable attorneys' fees and costs to the prevailing party. The award shall be in writing, signed by the arbitrator, and shall provide the reasons for the award. The Arbitrator may provide for any remedies that would be available in a comparable judicial proceeding, unless such remedies are precluded under state law. This does not prevent you from filing a charge or claim with any governmental administrative agency as permitted by applicable law.

Arbitration is an **essential element** of your employment relationship with Volt and is a **condition of your employment**."(Emphasis added).

[3] The Acknowledgement provides:

"I have read, understand, and **agree to be bound** by the Company's Discrimination Complaint Procedures, including Arbitration, and **expressly waive my right to sue** the company, its agents and employees, in court and **I agree to submit** to final and binding arbitration any dispute, claim or controversy arising between me and the Company that I would have been otherwise entitled to file in court." (Emphasis added).

and binding," "expressly waive my right to sue... in court," and "condition of employment." In both, there is also a notable change in language and tone from the disclaimer and reservation of rights (which appear on page 7 of the Handbook, as opposed to pages 20 and 21 where the arbitration provision appears), which uses soft language. The strong contractual language of the arbitration provisions makes it plain that a valid arbitration agreement was entered into between Curry and Volt.

Furthermore, the courts have routinely held that an arbitration provision may constitute a separate and enforceable contract even where the document in which it is contained may be invalid, such as in cases of fraud or voidable contracts, and regularly compel arbitration in such circumstances. Here, the arbitration provisions in the Handbook and Acknowledgment are distinct from the other provisions contained therein, and stand apart as enforceable and binding arbitration agreements.

In sum, the issue presented herein of contract validity is one for the arbitrator. However, if the Court addresses the issue, the elements of contract formation are satisfied and the arbitration provision is a stand-alone enforceable agreement. Those factors, coupled with the strong policy of promoting arbitration, compel the conclusion that there is a valid agreement to arbitrate. Accordingly, arbitration should be compelled and this action stayed.

## ARGUMENT

### I. THE ISSUE OF WHETHER AN AGREEMENT EXISTS IS FOR THE ARBITRATOR TO DECIDE

Curry's contention that the Handbook and Acknowledgment create an illusory and unenforceable contract is an issue that must be decided in the first instance by the arbitrator, and not by this Court. In <u>Buckeye Check Cashing v. Cardegna</u>, <u>supra</u>, where the respondents alleged that the usurious finance charge in the contract rendered the contract illegal and void *ab initio*, the United States Supreme Court reinforced and redefined its previous holding in <u>Prima Paint Corp. v.</u>

-4-

Flood & Conklin Mfg. Co., supra that "a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator." Buckeye, 546 U.S. at 445.

The Supreme Court specifically noted that "[t]he issue of a contracts validity is different from the issue whether any agreement . . . was ever concluded. Id. at 444, n.1. "The former question includes, for example, whether the contract was fraudulently induced, or whether the contract was rendered invalid by a usurious finance charge; the latter includes questions as to whether a party actually signed the contract, was authorized to sign it, or had the mental capacity to consent to it." Shlomo Bar-Ayal v. Time Warner Cable, Inc., 2006 U.S. Dist. Lexis 75972, *23-24 (S.D.N.Y Oct. 16, 2006), citing, Buckeye, 546 U.S. at 444, n.1.[4]

Curry argues that the disclaimer and reservation of rights language in the Handbook render the entire Handbook and Acknowledgement invalid, just like litigants who have argued that a usurious finance charge or fraud voided their agreements. Curry is **not** arguing that he did not receive the Handbook or Acknowledgment, that he did not sign the Acknowledgement, or that he lacked the authority or capacity to consent thereto. Nor is he arguing that the arbitration agreement itself, separate from any other aspect of the Handbook, is invalid. Rather, Curry argues that the Handbook and Acknowledgment, including the arbitration provision, are not valid contracts. Accordingly, because Curry's argument is one of contract validity, not whether there was an

---

[4] See also Gonzalez v. Ales Group, 2006 U.S. Dist. LEXIS 45228 (S.D.N.Y. Jul. 6, 2006)(Cote, J.) (where employee complained that arbitration agreement was not valid because she had revoked the agreement, court determined that the issue should be determined by the arbitrator); Boston Beer Company v Oak Beverages, 2006 U.S. Dist. LEXIS 63329 (S.D.N.Y. 2006 Sep. 1, 2006) (issue of whether an entire agreement was permeated by fraud is one for the arbitrator); Rubin v. Sona Intl., 457 F. Supp. 2d 191 (S.D.N.Y. 2006) (issue of whether an arbitration clause in an offering plan could be enforced where it was alleged that the entire agreement was void *ab initio*, sent to arbitration; Abduljaami v. Legalmatch.com, 2006 U.S. Dist LEXIS 26327 (S.D.N.Y. Apr. 25, 2006) (case compelled to arbitration where arbitration provision was in an alleged contract of adhesion as no specific challenges to the arbitration agreement were made).

agreement to arbitrate, controlling precedent dictates that the issue of whether the Handbook and Acknowledgment constituted an enforceable agreement is a matter for an arbitrator to decide.

## II.  AN ENFORCEABLE ARBITRATION AGREEMENT EXISTS

If, however, the Court decides that it, rather than an arbitrator, should determine the issue of arbitration versus litigation, the conclusion is that there is a valid agreement to arbitrate.

First, "[c]ourts in this district routinely uphold arbitration agreements contained in employee handbooks where, as here, the employee has signed an acknowledgement form." Chanchani v. Salomon/Smith Barney, Inc., 2001 U.S. Dist. LEXIS 2036, *7 (S.D.N.Y. Mar. 1, 2001).[5] This is particularly so where the arbitration provisions, as here, are distinct from the other contents of the handbook and in firm and clear language, just as the Alternative Dispute Resolution section of the Handbook stands on its own, with a separate Acknowledgment. See Rand v. J.C. Bradford & Co., 1998 U.S. Dist. LEXIS 19513 (S.D.N.Y. Dec. 15, 1998).

Furthermore, in evaluating whether a valid agreement to arbitrate arose, courts look to the state law governing the formation of contracts under the specific circumstances to determine whether there is a binding agreement to arbitrate. Under New York law, the arbitration agreement between Volt and Curry bear all of the hallmarks of a contract: an offer to agree to arbitration, contained in the Handbook, assent by Curry formalized by his signature upon the Acknowledgment,[6] valid consideration in the form of Curry's continued employment with Volt,[7]

---

[5] See also Beletsis v. Credit Suisse First Boston, Corp., 2002 U.S. Dist. LEXIS 16586, *8 (S.D.N.Y. Sep. 4, 2002); Arakawa v. Japan Network Group, 56 F. Supp. 2d 349, 352 (S.D.N.Y. 1999); Degaetano v. SmithBarney, 1996 U.S. Dist. LEXIS 1140 (S.D.N.Y. Feb. 5, 1996); Maye v. SmithBarney, 897 F. Supp. 100 (S.D.N.Y. 1995).

[6] The Handbook expressly provides that arbitration is a condition of employment. Thus, Curry's continued employment for four years after receiving the Handbook and signing the Acknowledgement manifests his intent to be bound by the arbitration agreement. See Chanchani, 2001 U.S. Dist LEXIS 2036 at *3 (holding that when arbitration is a condition of employment, the employee "will be deemed to have accepted" an arbitration agreement when she continues to work after the promulgation of the arbitration policy); see also Spencer-Franklin v. Citi-Group/Citibank, N.A., 2007 U.S. Dist. LEXIS 25870, *4 (S.D.N.Y. Apr. 5, 2007) (continued...)

and a waiver of right to sue. Accordingly, Plaintiff should be compelled to arbitrate and this action should be stayed.

Furthermore the courts have held that "as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract," and have compelled arbitration. See Buckeye, 546 U.S. at 445; See also Robert Lawrence Co. v. Devonshire Fabrics, Inc., 271 F.2d 402 (2d Cir. 1959) (severing arbitration provision from contract that was allegedly induced by fraud); Amicizia Societa Navegazione v. Chilean Nitrate and Iodine Sales Corp., 247 F.2d 805 (2d Cir. 1960) (severing and holding enforceable a contract's arbitration provision when the contract itself was voidable because there was no "meeting of the minds" on an essential term of the contract).

Here, the arbitration provisions can and should be enforced as a separate agreement, irrespective of the disclaimer and reservation of rights language. This is because of the firm and binding language, tone, and placement of the arbitration provisions, as well as the fact that the provisions are separate from the other provisions in the Handbook and Acknowledgment.

Although not binding authority on this Court, the rationale applied to a virtually identical set of facts in Patterson v. Tenet Healthcare, Inc., 113 F.3d 832 (8th Cir. 1997) is very instructive. In Patterson, the United States Court of Appeals for the Eighth Circuit rejected the identical argument advanced by Curry that the disclaimer and reservation of rights language (identical or nearly

---

(...continued)
(finding plaintiff's continued to work after receiving a copy of employer's adopted arbitration policy evidences "her acceptance of the policy").

[7] A basic tenet of contract law is that "there is no requirement that both parties to a contract offer the same consideration." Curry's promise to arbitrate is supported by [Volt's] . . . continued employment of plaintiff. No additional consideration is necessary." Mooring-Brown v. Bear, Sterns & Co., 1999 U.S. Dist. LEXIS 18051, *10 (S.D.N.Y. Nov. 23, 1999). Furthermore, "[m]odern contract law has largely rejected the doctrine [of mutuality of obligation] 'as a general principal in contract law, as well as in the arbitration context.'" Hale v. First USA Bank, 2001 U.S. Dist. LEXIS 8045, *16 (S.D.N.Y. Jun. 19, 2001), quoting, Doctor's Assoc., Inc. v. Distajo, 66 F.3d 438, 451 (2d Cir. 1995). So long as a contract is supported by sufficient
(continued...)

identical to that at issue herein) rendered the arbitration provision unenforceable and ruled that the employee handbook and acknowledgement form constituted a binding and enforceable agreement to arbitrate. The Eighth Circuit found compelling the tone of language contained in the handbook and acknowledgment form, which included "I understand," "I agree," "I agree to abide by and accept," "condition of employment," "final decision," and "ultimate resolution." Patterson also found compelling that the arbitration provision "was separate from the other provisions of the handbook and that it constituted an enforceable agreement." In so ruling, the court explicitly relied upon two Second Circuit decisions: Robert Lawrence Co. v. Devonshire Fabrics, Inc., and Amicizia Societa Navegazione v. Chilean Nitrate and Iodine Sales Corp., discussed above. Patterson stated in this regard at 113 F. 2d at 835:

> We conclude, however, that the arbitration clause is separate from the other provisions of the hand-book and that it constitutes an enforceable contract. See Amicizia Societa Navegazione v. Chilean Nitrate & Io-dine Sales Corp., 274 F.2d 805, 808-09 (2d Cir. 1960) (citing Robert Lawrence Co. v. Devonshire Fabrics, Inc., 271 F.2d 402 (2d Cir. 1959)) (arbitration clause may constitute separate and enforceable contract). First, the arbitration clause is separate and distinct. It is set forth on a separate page of the handbook and introduced by the heading, "IMPORTANT! Acknowledgment Form." This page is removed from the handbook after the employee signs it and is stored in a file. In addition, there is a marked transition in language and tone from the paragraph preceding the arbitration clause to the arbitration clause itself. Although the preceding paragraph discusses the company's reservation of its "right to amend, supplement, or rescind any handbook provisions, the arbitration clause uses contractual terms such as "I understand," "I agree," I "agree to abide by and accept," "condition of employment," "final decision," and "ultimate resolution." **We believe that the difference in language used in the handbook and that employed in the arbitration clause would sufficiently impart to an employee that the arbitration clause stands alone, separate and distinct from the rest of the handbook. The reservation of rights language refers to the handbook provisions relating to employment, not to the separate provisions of the arbitration agreement.** (Emphasis added).

---

(...continued)
consideration, "there is no additional requirement of 'mutuality of obligation.'" Distajo, 66 F.3d at 451, quoting Restatement (Second) of Contracts, § 79 (consideration need not be equivalent).

The reasoning expressed by Patterson should be applied here.

Plaintiff's case law is unavailing. First, none of the New York cases cited by Plaintiff involved the issue of enforcing an arbitration agreement. Furthermore, none involved a clear manifestation of assent from the employee, as is the case here; or the scenario where an employee had agreed to bind himself, in clear, unyielding terms, as is the case here. Our case is the antithesis of these cases because Curry expressly and unambiguously bound himself to the arbitration provision, in clear language of assent, agreeing that arbitration was "final and binding", and an "essential element of employment" and that he "waived his right to sue in court."

Maas v. Cornell University, 94 N.Y.2d 87 (1999), upon which Plaintiff relies, is supportive of Volt's position. There, the court held that a handbook policy (not related to arbitration) was not binding on the employee because "an employee's action against an employer based on its written policies may not be maintained unless the employer 'made the employee aware of its express policy . . . and that employee detrimentally relied on that policy in accepting the employment.'" Maas, 94 N.Y. 2d at 93, quoting Matter of De Petris v. Union Settlement Assn., 86 N.Y. 2d 406, 410 (1995). Here, the contrary situation exists because both Volt and Plaintiff were aware of the arbitration policy and, accordingly, Volt should be entitled to rely upon Plaintiff's agreement to waive his right to sue in Court and his assent to arbitration being an essential condition of his employment. Plaintiff should not be allowed to now avoid his prior binding commitments by cloaking himself in disclaimer and reservation of rights language.[8]

---

[8] Additionally, the disclaimer/reservation of rights cases cited by Plaintiff, decided outside of New York, do not incorporate New York's strong policy towards enforcing arbitration agreements. "[C]ourts in this Circuit overwhelmingly rule in favor of arbitration when faced with the decision whether to compel arbitration." Dubois v. Macy's East Inc., 2007 U.S. Dist. LEXIS 66500, *11 (E.D.N.Y. Jul. 13, 2007). The New York courts also adhere to a liberal interpretation of assent by employees to arbitration agreements, finding binding arbitration agreements in circumstances where, among other things: The arbitration provision was housed in agreements as fleeting as applications for employment, which may be withdrawn by a prospective employee or rejected by a prospective employer. See Litaker v. Lehman Brothers Holdings, 1999 U.S. Dist.
(continued...)

The only authority cited by Plaintiff that is arguably persuasive on this Court is <u>United States ex rel. Harris v. EPS</u>, 2006 U.S. Dist. LEXIS 30012 (D. Vt. May 16, 2006), wherein the court found unenforceable an arbitration provision contained in an employee handbook and acknowledgment form. However, <u>Harris</u> is readily distinguishable because the arbitration language itself was ambiguous. The acknowledgment provided: "This arbitration provision *may* affect your legal rights. You *may* wish to seek legal advice before signing the Employee Acknowledgment Form." <u>Id</u>. at *5 (emphasis added). The language only warned that rights *may* be affected.

Quite *unlike* the <u>Harris</u> handbook and acknowledgment discussed hereinabove, the Handbook and Acknowledgment form use strong, unambiguous, binding language such as "agree to be bound," "expressly waive my right," and "I agree to submit" pertaining to arbitration, which is set apart in a distinct paragraph from all other provisions in the Acknowledgment form.

## CONCLUSION

For the reasons set forth above, defendants respectfully request that this Court grant their motion to compel arbitration and for a stay of this action in all respects.

Dated: January 23, 2008
      New York, New York

Respectfully submitted,

TROUTMAN SANDERS LLP

By: _____
    Sharon H. Stern (SHS-3788)

---

(...continued)
LEXIS 12581 (S.D.N.Y. Aug. 16, 1999)( where plaintiff alleged that he did not receive an entire agreement); <u>Debono v. Washington Mutual Bank</u>, 2006 U.S. Dist. LEXIS 89283, *3 (S.D.N.Y. Dec. 8, 2006) (where plaintiff contended she was pressured to sign the agreement without reading it); <u>Benson v. Lehman Bros.</u>, 2005 U.S. Dist. LEXIS 8542 (S.D.N.Y. May 9, 2005) (Cote, J.) (where the agreement was absent a signature); <u>Fisser v. International Bank</u>, 282 F. 2d 231, 233 (2d Cir. 1960) (FAA does not impose obligation to arbitrate only to one who has personally signed the written provision). If courts have found binding arbitration agreements in scenarios as ephemeral as these, then clearly the court should find a binding agreement in this matter.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
ANDREW CURRY,

                Plaintiff,             Civil Action No. 07 CV 7158 (DC)

   -against-

VOLT INFORMATION SCIENCES, INC. and     **CERTIFICATE OF SERVICE**
VOLT TELECOMMUNICATIONS GROUP, INC.,

                Defendants.
-----------------------------------------------------------X

      I, SHARON H. STERN, of counsel to the firm Troutman Sanders LLP, counsel for Defendants Volt Information Sciences, Inc. and Volt Telecommunications Group, Inc. in this action, do hereby certify that a true and correct copy of **Defendants' Reply Memorandum of Law in Further Support of Their Motion to Compel Arbitration and Stay this Action** was served by overnight courier on the 23rd day of January 2008 upon counsel for plaintiff in the within action by depositing same in an addressed, sealed envelope and causing Federal Express to deliver them to:

Jonathan Ben-Asher
Beranbaum Menken Ben-Asher & Bierman LLP
80 Pine Street - 32nd floor
New York, N.Y. 10005
Telephone: (212) 509-1616 ext. 11
Facsimile: (212) 509-8088

                                                             _____
                                                              Sharon H. Stern